UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JORGE FERNANDEZ MARTINEZ,

      Petitioner,

                    Case No. 8:10-CV-1735-T-23MAP
                           8:06-CV-466-T-23MAP

UNITED STATES OF AMERICA,

      Respondent.

_____/

## O R D E R

This cause comes on for consideration of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Cv-D-1; CR-D-132), the United States' Response in Opposition (Cv-D- 18), Petitioner's Traverse (Cv-D-19), and various medical documents Petitioner filed in support of his motion (Cv-D-10, 13, 14, and 16.)

By way of background, the charges against Petitioner arose from actions occurring between May 1, 2006 and May 26, 2006. Petitioner was originally charged in state court with various offenses including: trafficking in illegal drugs' trafficking in phenethylamines; felon in possession of a firearm; possession of cannabis' possession of cocaine; possession of drug paraphernalia; and carrying a concealed weapon. Attorney Bryant Camareno represented him with regard to a bond motion. The state charges were eventually nolle prossed on October 13, 2006.

In the meantime, on September 29, 2006, Petitioner was

federally charged in a criminal complaint with (1) possession with intent to distribute MDMA and cocaine in violation of 21 U.S.C. § 841(a); (2) possession of a firearm as a prohibited person in violation of 18 U.S.C. § 922(g)(1); (3) possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c); and (4) possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). (Cr-D-1). Attorney James Arrington was appointed to represent Petitioner. On November 8, 2006, Petitioner was charged by an Indictment with (1) conspiracy to possess with the intent to distribute MDMA, marijuana, and 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(ii) (Count One), (2) possession with the intent to distribute cocaine and MDMA in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Two), and (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Three). (Cr-D-9.)

By letter dated December 16, 2006, Petitioner complained of Arrington's representation of him. Specifically, Petitioner complained that Arrington had not filed motions Petitioner had requested of him and had not reviewed the discovery or prepared a defense. Petitioner requested that attorney Camareno be appointed to represent him and said that he felt "confident of him as a lawyer." (Cr-D-15.)

The Court appointed attorney Camareno to represent Petitioner in January 2007. Thereafter, Camareno filed two motions to suppress evidence. On January 28, 2006, the Government filed a motion to continue the trial. (Cr-D-30.) The Government stated that it had been involved in plea negotiations with defense counsel and that it had informed attorney Camareno that it would supersede the Indictment if Martinez rejected an offer to plead. According to the Government, attorney Camareno informed it that he had consulted with Martinez and that he did not wish to plead guilty and wanted to proceed to trial. (Id.)

On March 6, 2007, the Government filed a Superseding Indictment which added two additional charges, distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Four), and a second charge of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Five). (Cr-D-34.) On March 8, 2007, the Government filed an Information and Notice of Prior Convictions which advised Petitioner that he faced an increased penalty of a mandatory minimum term of imprisonment of 10 years to life. (Cr-D-38.) On March 9, 2007, the Court held an evidentiary hearing regarding the motions to suppress and ultimately denied the motions.

Petitioner proceeded to trial on March 12, 2007. On March 15, 2007, after the close of the evidence, the Court granted a judgment

3

of acquittal as to the charge in Count Five which charged possessing a Remington 870, 12 gauge shotgun in furtherance of a drug trafficking crime. On March, 16, 2007, the jury convicted Petitioner of all other Counts charged in the Superseding Indictment. On August 9, 2007, the Court sentenced Petitioner to a term of imprisonment of 360 months as to Counts One, Two, and Four followed consecutively by a term of 60 months imprisonment as to Count Three. Petitioner appealed, and attorney Camareno continued to represent him. The Eleventh Circuit affirmed Petitioner's conviction and sentence. <u>United States v. Fernandez Martinez</u>, 317 Fed. App'x 929 (11th Cir.), <u>cert. denied</u>, 130 S.Ct. 198 (2009).

Petitioner timely filed his § 2255 motion alleging various claims of ineffective assistance of counsel. Specifically, Petitioner alleges attorney Camareno rendered ineffective assistance of counsel in failing to (1) request a competency hearing; (2) request a downward departure based on diminished capacity at the time of the offense as well as Petitioner's mental disorders, substance abuse, and lack of education; (3) advise Petitioner regarding his sentencing exposure if he were found guilty after a trial as opposed to entering a guilty plea; (4) advise Petitioner that his sentence would be enhanced under the career offender provision; (5) advise Petitioner that the Government had extended him a plea offer; (6) allow Petitioner to

testify at trial and speak at sentencing; (7) object to Petitioner's illegal sentence under 28 U.S.C. § 994(h); (8) raise a sentencing error in light of the "except clause" of 18 U.S.C. § 924(c); (9) appeal the issue of Petitioner's career offender status; and (10) appeal the Court's lack of jurisdiction with regard to sentencing.

By order dated January 24, 2011, the Court found that an evidentiary hearing was necessary to resolve Petitioner's claims relating to whether attorney Camareno advised him about (1) the Government's plea offer; (2) the difference in his sentencing exposure if he went to trial versus entering a guilty plea; and (3) the fact that he would be enhanced as a career offender. The Court further found that an evidentiary hearing was necessary to resolve Petitioner's claim that attorney Camareno rendered ineffective assistance in failing to request a competency hearing.

The Court appointed the Office of the Federal Public Defender to represent Petitioner at the hearing. The hearing, which was originally scheduled for February 23, 2011, was continued several times to allow Petitioner more time to prepare. In July 2011, the Office of the Public Defender was permitted to withdraw when a conflict of interest arose. Attorney Edward Panzica was appointed to represent Petitioner, however, Petitioner sought his removal and re-appointment of the Office of the Federal Public Defender. The Magistrate Judge found the conflict of interest had resolved and

therefore reappointed the Office of the Federal Public Defender.

The Court held an evidentiary hearing on August 30, 2011. Petitioner testified on his own behalf. Petitioner also presented the testimony of Dr. Bala Rao. Attorney Camareno testified on behalf of the Government.

### TESTIMONY AT THE HEARING

Petitioner testified that he did not care for attorney Arrington, who was originally appointed to represent him in his criminal case. He explained that he contacted attorney Camareno, whom he knew from state court, to see if he was willing to represent him. After Camareno told Petitioner has was on the CJA list, Petitioner wrote the Court asking that he be appointed to represent Petitioner.

According to Petitioner, Camareno told him from the beginning that they had the case won. Petitioner testified that he saw Camareno four or five times. He said that Camareno did not show him the Indictment and did not review the evidence with him nor did he give him the evidence to review on his own. He further testified that they didn't discuss witnesses or Petitioner's drug use.

Petitioner explained that Camareno talked to him as a friend rather than an attorney. Petitioner testified that they never discussed the Sentencing Guidelines, the career offender enhancement, or the maximum penalties. He also said that Camareno

did not discuss a plea agreement with him or acceptance of responsibility. Petitioner testified that Camareno told him on the day of trial that the Government had added additional charges. According to Petitioner, Camareno did not explain the effect of the additional charges on the possible penalties.

Petitioner testified that he wanted to cooperate with law enforcement but that attorney Camareno told him they had the case won and that it wouldn't benefit Petitioner. Petitioner said that Camareno told him he "would bring him home."

Petitioner testified that had he known the amount of incarceration he was facing, he would have "worked something out." Only when he was specifically asked by his counsel whether he would have pled guilty did Petitioner respond in the affirmative. Petitioner testified that he was never told he was facing a term of imprisonment of 360 months to life and that, had he known, he would have worked out a deal even if he were not guilty.

Petitioner testified that he is incompetent "to a point" and that he never understood what was going on.  He, however, demonstrated during his testimony a remarkable ability to retain and expound on the essential elements of the issues before the Court.

Dr. Bala Rao, a psychiatrist, testified he met with Petitioner on May 30, 2011, for purposes of a psychiatric evaluation. Dr. Rao testified that he reviewed Petitioner's medical records and

administered psychological tests.  Dr. Rao's diagnoses were bipolar disorder, not otherwise specified, polysubstance dependence, a history of traumatic brain injury, and ADHD by history.  Dr. Rao considered Petitioner's level of functioning on that day to be 60, showing minimal to no problems.  He believed that Petitioner was suffering from bipolar disorder at the time of his arrest on the charges of which Petitioner was ultimately convicted.  Dr. Rao considered Petitioner to be competent on May 30, 2011.  He could not give an opinion as to Petitioner's competency in 2006 or 2007. He, however, admitted that attorneys can usually tell whether a client is competent or not.  He further admitted that a diagnosis of bipolar disorder does not necessarily render a person incompetent.

Attorney Bryant Camareno testified that he has been practicing criminal law since 1994 and has appeared as counsel in 171 jury trials.  He explained that Petitioner's girlfriend asked him to represent Petitioner at a bond hearing in state court in May 2006. Despite the fact that he was not further retained, he continued to assist Petitioner.  Camareno recalled that Petitioner's charges were federalized in October or November 2006 and that Petitioner called him to request that he represent him with regard to the federal case.  Camareno agreed to do so if he were appointed by the Court.

Camareno testified that he and Petitioner got along well and

that he never had the impression Petitioner didn't understand what was going on. He explained that he contacted Petitioner's previous attorneys and that no one thought Petitioner was incompetent. Camareno testified that he was aware of Petitioner's mental health issues but that he believed Petitioner to be of sound mind. He stated that had he believed Petitioner's competency was an issue, he would have raised it.

According to Camareno, Petitioner was very involved in the defense of his case. Camareno explained that Petitioner believed he was entrapped. He testified that Petitioner provided him with caselaw relating to entrapment and Fourth Amendment issues.

Camareno testified that he and Petitioner reviewed the discovery and that he also provided Petitioner with a copy of same. Camareno said that, prior to the charges being federalized, he and Petitioner discussed him pleading guilty in state court, but that Petitioner was not interested.

The only other time Camareno specifically recalled discussing a guilty plea with Petitioner was prior to the Government superseding the Indictment. Camareno recalled that former AUSA Anthony Porcelli called him and offered to allow Petitioner to plead open to the charges and said Petitioner could attempt to cooperate with law enforcement in order to reduce his sentence. Camareno recalled that AUSA Porcelli would not agree to let Petitioner out on bond in order to provide cooperation. Camareno

testified that the deal was not "good enough" for Petitioner and that Petitioner's response was "no deal." Camareno explained that Petitioner rejected that offer because he wanted to be released on bond to cooperate and he believed he had been entrapped.

Camareno testified that he advised Petitioner he was facing ten years to life imprisonment after the Superseding Indictment. He did not recall having the Guidelines with him during the discussion but recalled that he told Petitioner he was guaranteed at least 20 years if he were convicted. Camareno insisted the Petitioner knew he was facing life but that Petitioner nonetheless insisted he was innocent by way of entrapment and wanted his day in court.

Camareno denied telling Petitioner that he would win the case. He said it is his practice to tell his clients that he will do everything he can, but he will never assure a client of a guaranteed win as there is no telling what a jury will decide.

Camareno testified that he discussed with Petitioner his right to testify but that he advised him from testifying at trial for several reasons. First, Camareno did not want to expose the jury to Petitioner's prior criminal record. Second, he felt that Petitioner's testimony may contradict the testimony of his girlfriend. Third, Camareno did not like Petitioner's explanation as to why he had a firearm at the time of his arrest.

With regard to sentencing, Camareno felt he did what he could

10

under the circumstances. He explained that he did not feel Petitioner's mental health issues and drug abuse would have made a difference for purposes of mitigation of sentence. Camareno candidly admitted, however, that while he was aware of Petitioner's prior criminal history, he had not been aware that Petitioner was a career offender until he reviewed the PSI.

### THE COURT'S CREDIBILITY FINDINGS

After hearing the testimony of Petitioner, Dr. Rau, and attorney Camareno, observing their demeanor, and taking into account the witnesses' interests in the outcome of these proceedings, the Court finds that Petitioner's testimony, to the extent that it contradicts attorney Camareno's testimony, is not credible and fully credits the testimony of attorney Camareno. The Court also credits Dr. Rau's testimony.

Petitioner's testimony was not credible for various reasons. He presented at the hearing as manipulative and calculating. His testimony conflicts with other evidence of record. For instance, while he testified that attorney Camareno never reviewed the Indictment with him, at his arraignment on the original Indictment on November 22, 2006, attorney Arrington, who then represented Petitioner, specifically stated he had reviewed the Indictment with Petitioner. While Petitioner was present at the arraignment, he did not object to attorney Arrington's statement.

Furthermore, Petitioner' testimony that attorney Camareno

11

never reviewed the Indictment with him is in complete contradiction to his statements made at arraignment on the Superseding Indictment. Specifically, at his arraignment on March 9, 2007, attorney Camareno stated that Petitioner "has been read the indictment." (Cr-D-94, p. 4.) The Court stated, "Mr. Martinez, you have heard the comment of Counsel?," to which Petitioner responded in the affirmative. (Id.) The Court then stated, "You have read or have read to you the charges contained in the superceding indictment?" Petitioner responded, "Yes, sir." (Id.)

Also, while Petitioner testified that he would have pled guilty, his testimony completely contradicts a letter he wrote Magistrate Judge Wilson in October 2006. In that letter, Petitioner stated that he had planned to proceed to trial on the state charges, but those charges were dropped. He made no suggestion in his letter that he wanted to plead guilty. Rather, he claimed innocence and requested Judge Wilson look into the matter. Also, Petitioner wrote in a March 2010 letter to the Court that he told Camareno "let's go to trile [sic]...." (Cr-D- 128, p. 1.)

Moreover, Petitioner has been untruthful in the past when it suited his interests. Significantly, Petitioner wrote in his October 2006 letter that he told detectives that he had nothing to do with any of the criminal activities at the party and was not involved in any way and had "no part of their doing." According to

12

Petitioner, he was simply at the house to "party." Also in the letter, Petitioner outright lied and wrote that he knew nothing about the bag with the drugs and gun that was found in the vehicle with Petitioner at the time of his arrest. He wrote that the bag belonged to the woman driving the car and that he had no idea of its contents. However, the video introduced at trial clearly showed Petitioner carrying the bag out of the house and into the vehicle.

On the other hand, attorney Camareno is an experienced attorney who has been practicing criminal law for 17 years. He is a former Federal prosecutor and had been practicing law for approximately 12 years at the time he represented Petitioner. There is simply no reason why he would not have reviewed the discovery with Petitioner, discussed witnesses, and advised him regarding the possible penalties and any plea offer from the Government.

Having assessed the credibility of the witnesses, the Court now turns to the ineffective assistance of counsel standard.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel require a showing of the two-prong test as set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to succeed under the Strickland test, a movant has the burden of proving: (1)

13

deficient performance by counsel; and (2) prejudice resulting therefrom. Id. at 687.

The first prong of the Strickland test requires the Court to determine whether trial counsel performed below an "objective standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688, 690. Notably, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions with reasonable and competent judgment. Id.

A counsel's performance is deficient if, given all the circumstances, his or her performance falls outside of accepted professional conduct. Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (en banc) (quoting Strickland, 466 U.S. at 689 and Darden v. Wainwright, 477 U.S. 168 (1986)). Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1315.

The Supreme Court has consistently held that "as a matter of law, counsel's conduct ... cannot establish the prejudice required

14

for relief under the second [prong] [o]f the <u>Strickland</u> inquiry."
<u>Nix v. Whiteside</u>, 475 U.S. 157, 175 (1986). This admonition
emphasizes the stringent requirement that if a petitioner does not
satisfy both prongs of the <u>Strickland</u> test, "he will not succeed on
an ineffective assistance claim." <u>Zamora v. Dugger</u>, 834 F.2d 956,
958 (11th Cir. 1987). <u>See also</u> <u>Weeks v. Jones</u>, 26 F.3d 1030, 1037
(11th Cir. 1994). Therefore, a court may resolve a claim of
ineffective assistance of counsel based solely on lack of prejudice
without considering the reasonableness of the attorney's
performance. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11th Cir. 1995)
(citing <u>Strickland</u>, 466 U.S. at 697).

With regard to the second prong, the petitioner must show
there is "a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been
different." <u>Strickland</u>, at 694-95. A reasonable probability is a
probability "sufficient to undermine confidence in the outcome."
<u>Id.</u> at 694.

With the foregoing standard in mind, the Court turns to the
issues presented in Petitioner's Motion.

## I.   FAILURE TO REQUEST A COMPETENCY HEARING

Petitioner first claims Camareno rendered ineffective
assistance in failing to investigate his competency or request a
competency hearing. He argues that, in addition to his documented
mental health disorder, immediately prior to the commission of the

15

offenses he had been committed to a mental health and drug dependence institution. He also claims that his mother had died shortly prior to his offenses and that her passing caused him to be in a manic state of depression.

Petitioner fails to show that attorney Camareno acted deficiently in failing to request a competency hearing. Furthermore, he fails to show prejudice resulting from counsel's alleged failure to investigate competency or to request a competency hearing. In order to show prejudice, Petitioner must show a reasonable probability that he was incompetent at the time of the trial. <u>Futch v. Dugger</u>, 874 F.2d 1483, 1487 (11th Cir. 1989); <u>Alexander v. Dugger</u>, 841 F.2d 371, 375 (11th Cir. 1988). A defendant is competent if (1) he has the sufficient present ability to consult with counsel with a reasonable degree of rational understanding, and (2) he has a rational and factual understanding of the proceedings against him. <u>Dusky v. United States</u>, 362 U.S. 402 (1960) (per curiam).

Petitioner has presented no evidence showing a reasonable probability that he was incompetent at the time of the trial. Dr. Rau testified that he could not give an opinion regarding Petitioner's competency in the years 2005 to 2007. Attorney Camareno, however, testified that he felt Petitioner was of sound mind and that Petitioner was able to consult with and understand Camareno. Additionally, attorney Camareno testified Petitioner was

actively involved in his defense and even provided Camareno with caselaw relating to certain issues.

Further, the medical records submitted by Petitioner also do not support any claim of incompetency. Specifically, records from March 2005 indicate Petitioner completed 63 days in a residential drug treatment program. His prognosis was good. (Cv-D-14, Exh. 2.)  Records from August 4, 2006, indicate Petitioner said he was doing well. He was oriented to time, place and situation. His behavior was unremarkable, and his speech coherent. He expressed that he did not want mental health services at that time. (Cv-D-10, Exh.)  A comprehensive mental health evaluation from May 2007, approximately two months after Petitioner's trial, indicated Petitioner's mood and affect were within normal limits. He expressed thoughts in an orderly manner. His judgment and insight were unimpaired. Petitioner reported he was "doing well." No mental health plan was required. (Id.)

Petitioner's competency is further supported in the record by his own submissions during the pendency of his criminal case. In this regard, Petitioner wrote various letters requesting relief on his on behalf. (Cr-D-15; DTX 6 and GTX 13C.)  As the evidence before the Court does not demonstrate a reasonable probability Petitioner was incompetent at the time of trial, Petitioner is not entitled to relief as to this claim.

17

## II.  DOWNWARD DEPARTURE

Petitioner next claims that his counsel was ineffective in failing to move for a downward departure based on Petitioner's mental health disorders, drug abuse, lack of education, and diminished capacity.

Petitioner fails to show that attorney Camareno's performance at sentencing fell below an objective standard of reasonable professional assistance.  Nor has Petitioner shown any resulting prejudice.  At the time of Petitioner's sentencing, U.S.S.G. § 5H1.4 specifically provided that "[d]rug or alcohol dependance or abuse is not a reason for a downward departure."[1]  U.S.S.G. § 5H1.4 (2007).  Furthermore, section 5K2.0(d)(1) prohibited a departure based on drug or alcohol dependence.  U.S.S.G. § 5K2.0(d)(1). Additionally, education is not generally relevant in determining whether a departure is appropriate.  U.S.S.G. § 5H1.2.  Also, at the time of Petitioner's sentencing, the Guidelines provided that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a departure is warranted...."[2]  U.S.S.G. §

---

[1] That provision has since been amended to read "[o]rdinarily drug or alcohol dependence is not a reason for a downward departure.  U.S.S.G. § 5H1.4 (2010).

[2] The current provision provides that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines...."  U.S.S.G. § 5H1.3 (2010).

18

5H1.3 (2007).

Additionally, information relating to Petitioner's education, drug abuse and mental health was included in the PSI which the Court reviewed prior to the sentencing hearing. (PSI ¶86, 87, 89-90.) Further, attorney Camareno, in fact, argued for a departure at sentencing. (Cr-D-90, p. 5-7, 8, 10-11.) He argued that Petitioner was a drug addict who had been using drugs all his life and was supporting his own habit. (Id. at 6, 8.) Camareno provided details of Petitioner's childhood and that he became addicted to drugs. (Id. at p. 63.) Attorney Camareno also noted that Petitioner suffered from mental disorders including bipolar disorder, personality disorder, schizophrenia and impulsive personality disorder. (Id. at p. 66.) Attorney Camareno concluded, "we ask that the Court consider his history, his mental disorders, his need for treatment, and impose the - - I think the least possible sentence, and at a minimum, Your Honor, the - - the low end of the guidelines." (Id. at p. 70.)

After considering the arguments of counsel at sentencing, the Court stated that, "[a]fter considering the advisory Sentencing Guidelines, and the factors identified in Title 18 of the United States Code, Section 3553 ... that the sentence imposed is sufficient but not greater than necessary to comply with the statutory purposes of sentencing." (Cr-D-90, at p. 76-77.) The Court also explained that the sentence was reasonable "given the

19

defendant's serious prior criminal history and the nature of the instant offenses with which he has been tried and convicted." (Id. at p. 77.)

Petitioner's claim also does not warrant relief because he has failed to show that there is a reasonable probability that the outcome of his sentencing would have been different. As previously noted, a departure based on drug addiction was prohibited. With regard to his lack of education and mental impairments, Petitioner has not shown that his circumstances were so extraordinary or exceptional to warrant a downward departure.

Similarly, Petitioner's claim that his counsel was ineffective in failing to request a departure based on diminished capacity also fails. The district court may grant a downward departure based on diminished capacity if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity substantially contributed to the commission of the offense. U.S.S.G. 5K2.13. Petitioner has not presented any evidence that his mental capacity was significantly reduced or that his mental capacity contributed to the offense.

## III. SENTENCING EXPOSURE/CAREER OFFENDER/PLEA OFFER

Petitioner claims that attorney Camareno failed to advise him regarding the severity of the sentence he was facing and that he would be considered a career offender. He further claims that

Camareno never told him about a plea offer extended by the Government and failed to explain to him the risks of proceeding to trial and the benefits of entering a guilty plea.   Petitioner states in an affidavit that, "[c]ounsel failed to inform me that I was classified as a career offender and faced a sentence of 30 years to life if I proceeded to trial and was found guilty, or that I only faced a sentence of 120 to 151 months if I entered a plea." (Cv-D-3, ¶ 3.)   He also states that it was not until after trial that he learned the Government had offered a plea agreement.   (Id. at ¶ 4.)

No evidence was presented at the hearing of a formal written plea agreement proposed by the Government.   Furthermore, no evidence was presented demonstrating that Petitioner would have faced a sentence of 120 to 151 months had he entered a plea of guilty. Rather, from the Court's calculations, it appears that had Petitioner pled guilty to the charges in the original Indictment, prior to the Government filing the Superseding Indictment and the § 851 notice, Petitioner's total offense level would have been 34 pursuant to U.S.S.G. § 4B1.1(b)(2).   Had Petitioner received a three-level adjustment for acceptance of responsibility, he would have had a total offense level 31 with a resulting guideline sentencing range of 188 to 235 months as to Counts One and Two. Petitioner, however, still would have a faced a consecutive mandatory term of imprisonment of five years as to Count Three.   As

21

such, Petitioner's total sentencing range under the guidelines would have been 248 to 295 months, nearly double the time Petitioner claimed he would have faced had he pled guilty.

The Court finds, based on the credible testimony of attorney Camareno, that Camareno advised Petitioner of the 10-year mandatory minimum sentence and that the maximum sentence he faced was life imprisonment. The Court further finds that attorney Camareno advised Petitioner of the Government's offer to allow Petitioner to plead guilty to the charges in the original Indictment and attempt to provide assistance to law enforcement. The Court further finds that Petitioner rejected the plea offer.

As indicated above, attorney Camareno candidly admitted that he failed to discover that Petitioner was a career offender until he reviewed the PSI. The Court need not decide whether Camareno's failure to determine and advise Petitioner that he would be sentenced as a career offender constituted constitutionally deficient performance because Petitioner fails to meet the second prong of the Strickland test. In this regard, Petitioner failed to establish a reasonable probability that he would have pled guilty had he been advised he would be sentenced as a career offender.

Attorney Camareno advised Petitioner that he faced a sentence of life imprisonment. Petitioner, however, believed he had been entrapped and refused to consider a plea offer from the Government. Previously, Petitioner refused to plead to the drug charges at the

22

state level and had planned to proceed to trial. Petitioner continually professed his innocence and even did so in his October 2006 letter to Judge Wilson. Additionally, when interviewed by the probation officer at the Sarasota County Jail on April 11, 2007, "[P]etitioner advised that he went to trial in this case because he was innocent of these charges." (PSI Addendum, p. 2.) The PSI also noted that Petitioner "maintains his innocence regarding his conviction of possessing a firearm with furtherance of a drug trafficking crime...." (Id. at p. 3.)

Finally, the Court does not find credible Petitioner's testimony that he would have pled guilty. At the evidentiary hearing, Petitioner was evasive about his guilt as well as whether he would have pled guilty. Several times he stated he would have "worked something out." Only when prompted by counsel on re-direct did he reluctantly admit his guilt and respond in the affirmative that he would have pled guilty. Furthermore, Petitioner's claim that he would have pled guilty only comes after he was convicted at trial, had a lengthy term of imprisonment imposed, and was unsuccessful on appeal.

## IV.  FAILURE TO ALLOW PETITIONER TO TESTIFY AT TRIAL

Petitioner contends that he repeatedly told his attorney he wanted to testify on his own behalf at trial but that Camareno refused to allow Petitioner to do so. He also claims that Camareno prevented him from speaking at sentencing.

A criminal defendant has a constitutional right to testify at trial on his own behalf and said right cannot be waived by defendant's defense counsel.   United States v. Teague, 953 F.2d 1525, 1530 (11th Cir.1992) (en banc).   When a defense counsel violates a defendant's right to testify, the appropriate vehicle is a claim of ineffective assistance of counsel.   Id. at 1534. Specifically, the court explained:

> [I]f defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental constitutional right to testify.   Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowing and voluntary. Under such circumstances, defense counsel has not acted "within the range of competence demanded of attorneys in criminal cases," and the defendant clearly has not received reasonably effective assistance of counsel.

Id. at 1534 (citations omitted).

The record establishes that Petitioner was aware of his right to testify at trial and that the final decision whether to do so rested with him.   First, attorney Camareno discussed with Petitioner the right to testify at trial. He, however, recommended that Petitioner not testify.  Second, on March 15, 2007, the Court held the following colloquy with Petitioner:

> THE COURT:       - - you have the right to testify in this case.
>
> THE DEFENDANT: Yes, sir.

24

>THE COURT:      I want you to be fully advised of that. And
>if your attorney advises you that he does not
>want you to testify, you can take his advice
>and not take the witness stand, or you can
>insist on taking the witness stand and
>testifying if that is what you want to do.  Do
>you understand that?
>
>THE DEFENDANT: I understand, sir.
>
>THE COURT:      Pardon?
>
>THE DEFENDANT: I understand.  Thank you.
>
>THE COURT:      All right.  Thank you.

(Cr-D-104, p. 626.)   The following day the Court conducted the

following colloquy:

>THE COURT:      All right.  Mr. Martinez.
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT:      I'm going to ask you again about your right to
>take the witness stand.  You understand that
>you do have that right, and if it is not
>exercised now that's the end of your
>opportunity to testify.   If you want to
>testify, you can.
>
>THE DEFENDANT: I understand, sir.
>
>THE COURT:      And do you wish to testify?
>
>THE DEFENDANT: No, sir.
>
>THE COURT:      All right.
>
>THE DEFENDANT: Thank you.

(Cr-D-105, p. 766.)

Based on the foregoing colloquies, the Court finds that

Petitioner was advised that the decision of whether or not to

testify at trial was Petitioner's decision alone and Petitioner

affirmed that he understood this and told the Court he did not wish to testify.   Thus, the record belies Petitioner's claim that his attorney refused to allow him to testify.

Even assuming counsel prevented Petitioner from testifying, Petitioner fails to meet the second prong of the Strickland test. After reviewing the trial transcript, the Court finds that Petitioner has not established a reasonable probability that his testimony would have changed the outcome of the trial.   In this regard, the evidence regarding Petitioner's guilt was substantial. Moreover, Petitioner fails to demonstrate how his testimony would have been considered by the jury more credible than the testimony of all of the Government's witnesses.

Nor is Petitioner entitled to relief with regard to his claim that attorney Camareno refused to let Petitioner speak at sentencing.   The record demonstrates that the Court provided Petitioner with a personal opportunity to "make such statement or presentation as you wish to make, and particularly in regard to mitigation of sentence...." (Cr-D-90, p. 62.)   Attorney Camareno advised that he had discussed the matter with Petitioner, who had prepared a letter addressed to the Court, but that the letter included privileged information so attorney Camareno instead summarized the letter. (Id. at 62-63.)   Attorney Camareno stated, "Mr. Martinez would love to speak, Judge, but again, I advised him to just, uh, let me be his mouthpiece, Judge." (Id. at 69.)   When

26

Mr. Camareno finished his argument with regard to mitigation of sentence, the Court again inquired of Petitioner if he had anything he wished to say, to which Petitioner responded, "God Bless you." (Id. at p. 70.)

Clearly, Petitioner was advised of his right to allocution. He was present when attorney Camareno told the Court that he had advised Petitioner to allow Camareno to speak on his behalf. At no time did Petitioner object to Camareno doing so.   Moreover, Petitioner fails to meet the prejudice prong of the Strickland test as he has not shown that he would have received a lesser sentence had he personally spoken in mitigation of sentence.

**V.   FAILURE TO RAISE A SENTENCING ERROR BASED ON "EXCEPT CLAUSE"**

Petitioner next claims attorney Camareno was ineffective in failing to argue that Petitioner's sentence violated the "except clause" of 18 U.S.C. § 924(c)(1)(A).  Petitioner claims that the 60-month sentence for the gun charge in Count Three of the Superseding Indictment must run concurrent, rather than consecutive, to the 360 month sentence as to the other Counts.

Section 924(c) provides in pertinent part:

*Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law,* any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) ... in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime-(I) be

27

sentenced to a term of imprisonment of not less than 5 years....

18 U.S.C. § 924(c)(emphasis added).

Petitioner's claim is contrary to the recent decision of the Supreme Court in <u>Abbott v. United States</u>, --- U.S. ----, 131 S.Ct. 18, 23 (2010), "that a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." As such, Petitioner has failed to show that attorney Camareno acted deficiently in failing to raise this issue. Furthermore, Petitioner has not shown prejudice based on his counsel's failure to raise the issue on appeal as he has failed to show that there is a reasonable probability that but for his counsel's failure to raise the issue, the outcome would have been different.

## VI. FAILURE TO RAISE THE ISSUE OF CAREER OFFENDER ON DIRECT APPEAL

Petitioner argues that his counsel was ineffective in failing to raise on appeal an issue regarding Petitioner's career offender status. He contends he did not have the necessary predicate offenses to be considered a career offender.

A defendant is a career offender if (1) the defendant is 18 years at the time he committed the offense; and (2) the offense is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two previous convictions of either crimes of violence or controlled substance

28

offenses.    U.S.S.G.   §   4B1.1(a).    Petitioner's offenses of
conviction in the underlying criminal case were controlled
substances offenses and he was older than 18 years of age at the
time he committed them.  The issue then is whether Petitioner had
at least two prior felony convictions of either a crime of violence
or a controlled substance offense.

Section 4B1.2(b) defines a "controlled substance offense as
follows:

> an offense under federal or state law, punishable by a
> term of imprisonment of more than one year, that
> prohibits the manufacture, import, export, distribution,
> or dispensing of a controlled substance (or a counterfeit
> substance) or the possession of a controlled substance
> (or a counterfeit substance) with intent to manufacture,
> import, export, distribute, or dispense.

USSG § 4B1.2(b).  Florida law prohibits any person from selling,
manufacturing, or delivering, or possessing with intent to sell,
manufacture, or deliver marijuana.  Fla.Stat. § 893.13(1)(a)(2).
Such an offense is punishable by up to 5 years imprisonment.  Id.;
Fla. Stat. § 775.082(3)(d).  Petitioner was previously convicted of
delivery of a controlled substance in Case No. 03CF-10235 in the
Circuit Court for Orange County, Florida.  (PSI ¶ 55.)  As such,
that offense qualifies as a controlled substance offense.

Petitioner was also convicted of sale of a controlled
substance in Case No. 90-S-2706, Superior Court Hillsborough County
New Hampshire.  (PSI ¶ 49.)  New Hampshire law makes it unlawful
to sell a controlled drug except as authorized in that chapter.

RSA 318-B:2-1. Such an offense involving LSD is a class A felony punishable by a term of imprisonment of more than one year. See RSA 318-B:26. Accordingly, that offense also qualifies as a controlled substance offense.

As the convictions were correctly counted toward the career offender enhancement, attorney Camareno did not render ineffective assistance in failing to contest at sentencing or on appeal the fact that the convictions qualified Petitioner as a career offender. Nor has Petitioner suffered any prejudice as a result of his attorney's failure to raise this issue.

## VII. FAILURE TO OBJECT TO SENTENCE UNDER 28 U.S.C. § 994(H)

Petitioner asserts that Camareno was ineffective in failing to argue that Petitioner was illegally sentenced under 28 U.S.C. § 994(h). Petitioner specifically argues that while he was convicted of offenses under 21 U.S.C. §§ 841(b)(1)(B) and (b)(1)(C), he was sentenced "under 28 U.S.C. 994(h) for a 841(b)(1)(A) offense." (Cv-D-11.) He further claims his counsel should have raised the issue on appeal.

This issue is without merit. Section 994(h) directed the Sentencing Commission to adopt sentencing guidelines to punish recidivist offenders who commit crimes of violence or drug offenses "at or near the maximum term authorized" for those offenses. 28 U.S.C. § 994(h). As a result, the Sentencing Commission

implemented the career offender enhancement (U.S.S.G. § 4B1.1) to
implement that directive.     See U.S.S.G. § 4B1.1 (comment,
background (2007)).

The Government timely filed an Information and Notice of Prior
Convictions pursuant to 21 U.S.C. § 851(a) indicating its intent to
rely on Petitioner's prior convictions to seek enhanced penalties.
(Cr-D-38.)   Because Petitioner had multiple prior felony drug
convictions, his statutory maximum as to Count One under §
841(b)(1)(B) increased from 40 years imprisonment to life
imprisonment and his statutory maximum as to Counts Two and Four
under § 841(b)(1)(C) increased from a 20 year term of imprisonment
to a 30 year term of imprisonment.   See 21 U.S.C. §§ 841(b)(1)(B)
and (C).

The statutory enhancements had the effect of increasing
Petitioner's offense level under U.S.S.G. § 4B1.1(b) from 34 to 37.
Both the statutory enhancement and the career offender enhancement
were appropriate. Application Note 2 specifically provides:

> "Offense Statutory Maximum," for the purposes of this
> guideline, refers to the maximum term of imprisonment
> authorized for the offense of conviction that is a crime
> of violence or controlled substance offense, including
> any increase in that maximum term under a sentencing
> enhancement provision that applies because of the
> defendant's prior criminal record (such sentencing
> enhancement provisions are contained, for example, in 21
> U.S.C. § 841(b)(1)(A), (B), (C), and (D)). For example,
> in a case in which the statutory maximum term of
> imprisonment under 21 U.S.C. § 841(b)(1)(C) is increased
> from twenty years to thirty years because the defendant
> has one or more qualifying prior drug convictions, the

"Offense Statutory Maximum" for that defendant for the purposes of this guideline is thirty years and not twenty years. If more than one count of conviction is of a crime of violence or controlled substance offense, use the maximum authorized term of imprisonment for the count that has the greatest offense statutory maximum.

U.S.S.G. § 4B1.1, App N. 2 (2007). The Court followed the correct procedure in calculating Petitioner's base offense level.

As Petitioner was not illegally sentenced, his counsel did not render ineffective assistance in failing to raise the issue on appeal. Nor was Petitioner prejudiced by his failure to do so. As such, Petitioner is not entitled to relief as to these claims.

IT IS THEREFORE ORDERED THAT:

(1)  Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV-D-1; CR-D-132) is DENIED.

(2) The Clerk is directed to enter judgment in favor of the Government and CLOSE this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO PROCEED IN FORMA PAUPERIS DENIED

The Court now considers whether Petitioner is entitled to a certificate of appealability.  Title 28, United States Code, Section 2253(c)(2) provides:

A certificate of appealability may issue under paragraph (1)

32

**only if** the applicant has made a **substantial showing of the denial of a constitutional right.**

28 U.S.C. § 2253(c)(2).

To make a showing a substantial showing of the denial of a constitutional right where the district court has rejected the defendant's claims on the merits, the defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u> 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983)). Where the district court dismissed the claims on procedural grounds, the defendant must show "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.

Upon review, the Court finds that Petitioner has failed to make the requisite showing.  Specifically, he has failed to show that jurists of reason would find that the Court was incorrect in its ruling on the merits.  Therefore, a certificate of appealability is denied.  As the request for certificate of

appealability is denied, Petitioner's request to appeal <u>in forma</u> <u>pauperis</u> is also denied.

DONE AND ORDERED in Tampa, Florida, this _27ᵗʰ_ day of September, 2011.

WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT